IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MICHAEL DAVID LENZ                                                    PETITIONER
#73691

V.                                   NO. 4:04CV00551 JWC

LARRY NORRIS, Director,                                               RESPONDENT
Arkansas Department of Correction

MEMORANDUM OPINION AND ORDER

Michael Lenz, an inmate in the Arkansas Department of Correction, brings this 28

U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2), challenging his 1997

state court convictions.  For the reasons that follow, the petition must be DISMISSED.[1]

I.
Arguments

The petition advances the following claims:

1.      Petitioner's convictions were obtained by a guilty plea which was
unlawfully induced or not made voluntarily with understanding of the nature of the
charge and the consequences of the plea;

2.      His convictions were obtained by use of a coerced confession;

3.      His convictions were obtained by use of evidence gained pursuant to
an unconstitutional search and seizure;

4.      His convictions were obtained by use of evidence gained pursuant to
an unlawful arrest;

5.      His convictions were obtained by a violation of the privilege against
self-incrimination;

6.      His convictions were obtained by the unconstitutional failure of the
prosecution to disclose to him evidence favorable to his defense;

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge (docket entry
#13).

7.   He was denied the effective assistance of counsel;

8.   He was denied the right to appeal or obtain meaningful post-conviction review of his convictions;

9.   Misconduct of the judge, prosecutor, sheriff's office, and counsel; and

10.   His sentence is illegal.

Respondent filed a response (docket entry #6), conceding that Petitioner is in his custody, see 28 U.S.C. § 2254(a), but asserting that the petition should be dismissed as barred by the one-year statute of limitations for federal habeas petitions, id. § 2244(d). Petitioner replied (docket entries #9, #10, #11, #12). At the direction of the Court, Respondent filed a supplemental response addressing some of the Court's concerns and asserting that, alternatively, Petitioner's claims are procedurally barred due to his failure to properly raise them in the state courts (docket entries #14, #32). Petitioner replied (docket entry #33), and he has filed a number of other pleadings and exhibits in support of his petition, all of which have been reviewed (docket entries #15, #16, #17, #18, #19, #27, #28, #41, #42, #43, #45, #46, #47).

II.
Statute of Limitations

Respondent first contends that the petition is time-barred under 28 U.S.C. § 2244(d), which requires that a habeas petition be filed within one year of the date upon which a state conviction became final. Petitioner's convictions became final in July 1997, and he filed this petition almost seven years later, in June 2004. Although the Court believes that Respondent is probably correct, Petitioner has filed a number of pleadings asserting, among other things, that he has been in state court "nonstop" since his

conviction, that his state post-conviction pleadings have been ignored and not ruled upon, and that critical information has been withheld from him despite his diligent efforts to formulate and present his claims.  His allegations significantly cloud the issues regarding application of the statute of limitations, some of which simply cannot be resolved on the record presented.

Because the statute of limitations defense is not jurisdictional, the Court will proceed to Respondent's alternative argument in the interest of judicial economy.  See Day v. McDonough, 126 S. Ct. 1675, 1681 (2006); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006), pet. for cert. filed, No. 06-6320 (U.S. Aug. 31, 2006).

III.
Procedural Default

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see 28 U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts).  Where a prisoner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted.  Moore-El . Luebbers, 446 F.3d 890, 896 (8th Cir. 2006).  "Out of respect for the finality of state-court judgments, federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted."  House v. Bell, 126 S. Ct. 2064, 2068 (2006).  Failure to properly appeal the denial of a post-conviction petition to the highest state court constitutes

a procedural default.  Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005), cert. denied, 126 S. Ct. 1569 (2006).

Where a state procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the defaulted claim will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent of the underlying offense.  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986).  Where no cause has been demonstrated, the prejudice element of the procedural default analysis need not be addressed.  McCleskey v. Zant, 499 U.S. 467, 502 (1991).

Respondent contends that none of Petitioner's federal habeas claims were properly litigated at either the state circuit court level in a post-conviction petition or on appeal and, as such, are procedurally barred from being raised here.

On July 18, 1997, Petitioner entered a negotiated plea of nolo contendere (no contest) in the Circuit Court of Faulkner County, Arkansas, to charges of first degree murder, arson, aggravated robbery, being a felon in possession of a firearm, delivery of crystal methamphetamine, and various motor vehicle violations,[2] in Case Nos. CR-96-1268, CR-96-1122, and CR-96-1195.  He received a cumulative sentence of thirty years

---

[2]No safety inspection, operation of a motor vehicle during a period of license suspension or revocation, improper use of evidence of registration, standard equipment required.

of imprisonment.  (Resp't Ex. A; Resp't Ex. L [Def.'s Ex. 1].)[3]  By pleading nolo contendere, Petitioner waived his right to a direct appeal under Arkansas law.  Ark. R. App. P.-Crim. 1(a) (2006).

Shortly after entry of judgment, Petitioner sent a letter to the circuit court clerk, which was file-marked on July 29, 1997, complaining about the conduct of his attorney.  (Resp't Ex. B.)  This was construed as a petition for post-conviction relief pursuant to Ark. R. Crim. P. 37.  Counsel was appointed, and a hearing was held on October 20, 1997, where Petitioner says the court instructed him to file an amended petition clarifying his allegations about erroneous parole advice.  He filed an amended petition on November 13, 1997. (Resp't Ex. D, F.)

On March 10, 1998, judgment was entered in a separate criminal case, Faulkner County Circuit Court No. CR-97-773, based on Petitioner's negotiated plea of guilty to charges of second degree escape and theft of property.  (Resp't Ex. J, K.)  **These convictions are not the subject of this habeas petition.**  (See docket entry #2, ¶¶ 2-4, 6, 8.)  His cumulative ten-year sentence for the escape and theft convictions was ordered to run concurrently with the sentences at issue here.  At the plea hearing and at an earlier hearing, Petitioner, who was represented by counsel, acknowledged that, in accordance with the terms of his plea agreement and negotiated sentence, he would dismiss his pending Rule 37 petition in the three earlier criminal cases, as well as a pending civil rights action against Faulkner County officials in the federal courts.  The state agreed to dismiss

---

[3]Respondent's Ex. A-G are attached to docket entry #6; Respondent's Ex. H-T are attached to docket entry #32.  Petitioner's exhibits are attached to various docket entries, as indicated.

its counterclaim against him in the civil rights action.  (Resp't Ex. L,[4] at 35; Resp't Ex. M, at 8-10, 15.)

The docket sheets in Faulkner County Case Nos. CR-96-1268, CR-96-1122 and CR-96-1195 all reflect an entry on March 10, 1998, stating "Order of dismissal (post-conviction remedy only)."  (Resp't Ex. F.)[5]  The circuit clerk's files for these cases, submitted by Petitioner in their entirety as exhibits to docket entry #27, each contain a copy of this order.[6]  The order is signed by Petitioner, his attorney and the prosecutor, and shows that it was "filed in court" at 2:20 p.m. on March 10, 1998.  On June 16, 1998, an order was entered dismissing Petitioner's Rule 37 proceedings without prejudice, stating "Motion for post-conviction withdrawn by Defendant."  (Resp't Ex. E.)[7]

As Petitioner states – and as confirmed by the docket sheets for his criminal cases – he filed a "myriad of motions" after dismissal of his Rule 37 petition, along with various petitions, submissions and unspecified letters.  He also says he submitted other filings directly to the circuit judge, which were never acknowledged or ruled upon, and that they

---

[4]Resp't Ex. L consists of transcripts from two different hearings: (1) the July 16, 1997, plea and sentencing in Case Nos. CR-96-1122, CR-96-1195 and CR-96-1268; and (2) a February 17, 1998, pretrial hearing regarding the escape and theft charges in Case No. 97-773.

[5]This exhibit consists of separate docket sheets for each case, containing nearly identical docket entries.

[6]For Case No. 96-1122, the order appears at page 70; for No. 96-1195, the order is at page 60; for No. 96-1268, the order is at page 68.  For ease of reference, all further citations to this exhibit will be to the case file for Case No. 96-1122.

[7]For some reason, the dismissal order identifies only Case Nos. CR-96-1268 and CR-96-1195.  Case No. CR-96-1122 (the aggravated robbery count) is not listed, nor does the dismissal order appear on the docket sheet for that case, (Resp't Ex. F). It is clear from the in-court proceedings, however, that Petitioner was dismissing his Rule 37 petition as to all three cases. (Resp't Ex. M, at 8-9, 15, 19; Pet'r Ex. to docket entry #27, at 70.)

are deemed to still be pending until a ruling is made.  He says that he filed all his post-conviction attempts through the circuit judge, that all were accepted, and that no one ever advised him that this was not the correct procedure.  He says that among the numerous submissions he made to the circuit judge was a "notice of intent to file a petition for writ of *coram nobis*," shortly after dismissal of his Rule 37 petition.  He says that his counsel had advised him to dismiss the pending Rule 37 petition and file a notice of intent to seek *coram nobis*, that an attorney would then be appointed for him, and that "this time matters [would be] handled correctly."  He says that, at the time of his Rule 37 dismissal, the court "led [him] to believe" that matters would proceed as counsel had advised, and so he reluctantly accepted.  He says he then submitted his *coram nobis* petition and, when he received no response from the court, he filed another Rule 37 petition, which was ignored.

With the exception of a petition for writ of error *coram nobis* filed in September 2002 as discussed below, none of Petitioner's actual or attempted submissions after dismissal of his original Rule 37 petition constituted a procedurally correct presentation of his claims.

Under Arkansas law, all grounds for post-conviction relief are to be brought in a Rule 37 petition.  Ark. R. Crim. P. 37.2(b) (2006).  A second Rule 37 petition will be allowed only where the original petition was denied without prejudice.  Id.  When conviction is rendered pursuant to a guilty plea, a Rule 37 petition must be filed, in the circuit court which imposed the sentence, within ninety days of the date of entry of the judgment of conviction.  Id. 37.2(c).  Rule 37's time limitations are jurisdictional, and relief cannot be granted on an untimely petition for post-conviction relief.  Booth v. State, 110 SW.3d 759, 760 (Ark. 2003).  Once it is determined that jurisdiction does not exist due to the untimeliness of a

post-conviction petition, the case must be disposed of on that basis.  Maxwell v. State, 767 S.W.2d 303, 305 (Ark. 1989).

Here, Petitioner timely filed his first Rule 37 post-conviction petition alleging ineffective assistance of counsel, received an appointed attorney and a hearing, and then was allowed to amend the petition.  However, in return for a negotiated sentence in a separate criminal case (Case No. CR-97-773), Petitioner dismissed these post-conviction proceedings.  This encompassed all Rule 37 petitions and post-conviction motions pending in Faulkner County Case Nos. CR-96-1268, CR-96-1122 and CR-96-1195.  His intent is evidenced by: (1) the statements of Petitioner, his counsel and the court at a pretrial hearing on February 17, 1998, and at the plea hearing on March 10, 1998, in Case No. CR-97-773; (2) the March 10, 1998, docket entry in all three cases reflecting dismissal of his post-conviction remedies; (3) the March 10, 1998, order of dismissal signed by Petitioner and his attorney and filed in court that day; and (4) the June 16, 1998, order of dismissal upon Petitioner's motion to withdraw his post-conviction petition.  Emphasizing the need for clarity, the circuit court stated several times at the March 1998 plea hearing that Petitioner was dismissing his pending Rule 37 petition regarding his attorney in the other Faulkner County cases.  (Resp't Ex. M, at 19.)

Although the June 1998 dismissal order specified that the dismissal was without prejudice, any subsequent filings could not comply with Rule 37's jurisdictional time restraints as they would have been filed more than ninety days after the July 1997 entry of Petitioner's plea.  This would also be true as to any submissions between the in-court dismissal on March 10, 1998, and the June 1998 order of dismissal.  Therefore, any actual

or attempted filing of a Rule 37 petition by Petitioner after dismissal of his original Rule 37 petition was clearly untimely.

In any event, the circuit court's official docket sheets for the cases at issue do not reflect the filing of another Rule 37 petition after dismissal of the first one.  Petitioner submits a Rule 37 petition, (Pet'r Ex. 5 to docket entry #12), which was filed on May 8, 1998, *in Faulkner County Circuit Case No. CR-97-773*, not the cases from which his challenged convictions arose.   The petition references only one case number (in Petitioner's handwriting) and it references only the escape and theft convictions to which he pleaded guilty on March 10, 1998, *not* any of the convictions at issue here.  The docket sheet for Case No. CR-97-773 reflects the filing of the Rule 37 petition, but does not show any order specifically addressing it.  The petition does not appear on the docket sheets for the convictions at issue here.  It was Petitioner's responsibility to ensure that all filings were made in the proper court and in the proper form which would include, of course, designating the correct case number.   Moreover, even if the petition is construed as applying to all of Petitioner's Faulkner County cases, it would have been encompassed by the order dismissing his Rule 37 proceedings, entered on June 16, 1998, in the criminal cases at issue here.  Therefore, it is immaterial whether he ever received a ruling on it in Case No. CR-97-773.

Nor do the court's official docket sheets reflect the initiation of any *coram nobis* proceedings shortly after the Rule 37 dismissal in 1998, as Petitioner claims.  Delivering an item to a circuit judge is not the equivalent of filing the item with the circuit court clerk for purposes of Arkansas' post-conviction rules.  Benton v. State, 925 S.W.2d 401, 402 (Ark. 1996); see also Hamel v. State, 1 S.W.3d 434, 436 (Ark. 1999) (holding that the plain

language of Rule 37 is controlling and unambiguous in stating that the petition must be filed in the appropriate circuit court within the time limits specified in the rule).  It is also clear that, under Arkansas law, it is the responsibility of a litigant, even if pro se, to comply with the applicable procedural rules governing filing.  Brown v. Post-Prison Transfer Bd., 32 S.W.3d 754, 754-55 (Ark. 2000).  Regardless of whether the circuit judge sometimes extended the courtesy of forwarding pro se filings to the clerk for filing, Petitioner was not entitled to repeatedly submit his filings to an improper place and expect that they be rerouted.  It was his responsibility – not the circuit judge's – to see that his pleadings were in the proper form and were "delivered to, and accepted by, the appropriate court officer for placement into the official record."  Artuz v. Bennett, 531 U.S. 4, 8 (2000); see Terry v. State, 621 S.W.2d 476, 477 (Ark. 1981) (although petitioner submitted a number of letters and pro se pleadings to circuit judge and others, record did not show that he "actually filed, or even tendered, a pleading that can be identified or rationally treated as a Rule 37 petition").

If Petitioner believed that legitimate submissions were being ignored by the circuit judge, he should have taken other steps to ensure that his post-conviction pleadings were timely and properly filed and resolved.  It is clear from the record that Petitioner had no qualms about sending letters, multiple motions or petitions to the circuit clerk or even filing petitions for writ of mandamus with the Arkansas Supreme Court, seeking to compel circuit court action on his filings.  See Lenz v. Reynolds, No. CR 04-425, 2004 WL 2113045 (Ark. Sup. Ct. Sept. 23, 2004); Lenz v. Reynolds, No. CR 03-376, 2003 WL 22724703 (Ark. Sup. Ct. Nov. 20, 2003; see also Resp't Ex. F, P.  Moreover, his allegation that he routinely filed all of his post-conviction pleadings directly with the circuit judge is inconsistent with other

assertions that he sent pleadings to the court clerk and to the court reporter (see, e.g. docket entries #9, at 4 & 8; #11, at 8).

According to the record, Petitioner properly and timely initiated only one Rule 37 proceeding regarding the convictions at issue here, which he then withdrew.  He did not properly and timely attempt to appeal, set aside or otherwise challenge the June 1998 order dismissing that petition.  If he believed that subsequent events rendered the dismissal invalid, it was his responsibility to seek diligently to remedy the situation. Although there are letters and other evidence of communication with the court before then, nothing appears on the circuit court's official docket sheets until April or May 1999, at least ten months after the Rule 37 dismissal.  There then was a period of almost twenty months (May 1999 to January 2001) when nothing was filed by Petitioner with the circuit court in the relevant cases, nor has he submitted any evidence of an attempted filing or submission during that time period.

Petitioner did successfully file with the circuit clerk a petition for writ of error *coram nobis* on September 30, 2002, apparently raising all of the claims he presents here. (Resp't Ex. H.)  There is no specific time limit for seeking a writ of error *coram nobis* under Arkansas law.  Echols v. State, __ S.W.3d __, 2005 WL 107133, at *3 (Ark. Sup. Ct. Jan. 20, 2005).[8]  The petition was denied by order entered on August 7, 2003.  (Resp't Ex. I.)

---

[8]A writ of error *coram nobis* is an exceedingly narrow remedy under state law, appropriate only when "there existed some fact which would have prevented [a judgment's] rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment."  Echols, supra at *3.  It is not a substitute for a Rule 37 petition, which is the proper vehicle for raising most post-conviction claims.  McCarty v. State, 983 S.W.2d 418, 419 (Ark. 1998).

On August 25, 2003, Petitioner filed a "motion in response to trial court's ruling." (Resp't Ex. F; Pet'r Ex. to docket entry #27, at 178-85.) On October 6, 2003, he filed a "notice of intent to appeal." (Pet'r Ex. to docket entry #27, at 199-200.) On November 7, 2003, he tendered to the supreme court the record pertaining to the August 7 order, which the clerk declined to lodge because Petitioner had not filed a notice of appeal within the thirty-day period allowed for filing a notice of appeal under Ark. R. App. P.-Crim. 2(a)(4). See Lenz v. State, No. CR 03-1270, 2004 WL 171656, *1 (Ark. Sup. Ct. Jan. 29, 2004). Petitioner then filed a motion for belated appeal, which was denied by the Arkansas Supreme Court, as follows:

> A petitioner has the right to appeal a ruling on a petition for postconviction relief. With that right, however, goes the responsibility to file a timely notice of appeal within thirty days of the date the order was entered in accordance with Ark. R. App. P.-Crim. 2(a)(4). If the petitioner fails to file a timely notice of appeal, a belated appeal will not be allowed absent a showing by the petitioner of good cause for the failure to comply with proper procedure. This court has specifically held that it is not the responsibility of anyone other than the appellant to perfect an appeal. Neither the motion petitioner filed on August 25, 2003, nor the "notice of intent to appeal" filed October 6, 2003, was in the form of a notice of appeal. Neither conformed to Ark. R. App. P.-Civ. 3(e) (1998) in that there was no clear designation of the order or part of the order appealed from, no designation of the contents of the record on appeal, and no statement that the appellant had ordered the record. In short, there was no definitive notice given that an appeal was being taken.

> Petitioner's argument that he should not be held to procedural rules because he was acting *pro se* must fail because this court has consistently held that all litigants, including those who proceed *pro se*, must bear responsibility for conforming to the rules of procedure or demonstrating a good cause for not doing so. The *pro se* appellant receives no special consideration on appeal. It is entirely the responsibility of the *pro se* party desiring to appeal to file a proper notice of appeal and perfect the appeal.

> The purpose of the rule setting time limitations on filing a notice or lodging a record is to eliminate unnecessary delay in the docketing of appeals. We have made it abundantly clear that we expect compliance with

the rule so that appeals will proceed as expeditiously as possible.  It was the duty of the petitioner to file a notice of appeal in a timely manner.  As he did not do so and has not demonstrated good cause for the failure to do so, the motion for belated appeal is denied.

Id. at *1-*2 (citations omitted).

Petitioner filed a motion for reconsideration, contending that the circuit court and the circuit clerk had "systematically thwarted his efforts to obtain justice."  The supreme court rejected this, referring to its reasons previously given and stating that the petitioner had failed to make a showing of good cause for his failure to comply with proper procedure. Lenz v. State, No. CR 03-1270, 2004 WL 743851 (Ark. Sup. Ct. Apr. 8, 2004) (Resp't Ex. G).

Arkansas law has specific procedural requirements regarding the contents of a notice of appeal, which the Arkansas Supreme Court is entitled to interpret and apply.  See Ark. R. App. P.-Civ. 3(e).  Additionally, as stated by the Arkansas Supreme Court, when a criminal defendant has failed to file a proper notice of appeal within the time allowed by the state procedural rules, his remedy is to file a motion for belated appeal pursuant to Ark. R. App. Crim. 2(e).  To succeed, a party must demonstrate a "good reason" for his failure to file a timely notice of appeal.  Id.  These procedural rules are consistently followed by the Arkansas appellate courts, even as to pro se litigants.  See McDonald v. State, 146 S.W.3d 883, 887-92 (Ark. 2004) (explaining history and procedural rules regarding timely notices of appeal); DeViney v. State, 772 S.W.2d 607, 608-09 (Ark. 1989) (appellant failed to comply with Rule 3(e) regarding content of notice of appeal); Peterson v. State, 711 S.W.2d 830, 831 (Ark. 1986) (pro se litigants have responsibility to conform to procedural rules for filing a timely notice of appeal, or demonstrate good cause for not doing so).

13

Petitioner was allowed to press his arguments for an untimely notice of appeal, and the Arkansas Supreme Court's rejection of those arguments was in keeping with its well-established procedures and precedents.   This Court cannot second-guess the state supreme court as to whether Petitioner actually complied with the court's own rules.   A federal habeas court "should not consider whether the state court *properly* applied its default rule to [a] claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules."   Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004), cert. denied, 126 S. Ct. 41 (2005).   Moreover, the Eighth Circuit Court of Appeals has found that the Arkansas procedural rules regarding belated appellate filings are reasonable and adequate to bar federal habeas review and that their general application does not violate due process.   Lovell v. Norris 198 F.3d 674, 676-79 (8th Cir. 1999).

Therefore, to the extent Petitioner raised some or all of his federal habeas claims in the *coram nobis* petition, he procedurally defaulted them by failing to perfect the appeal.

In summary, Petitioner did not present any of his federal habeas claims to the appropriate state courts in a timely and procedurally correct manner.   His claims are all procedurally defaulted, and federal habeas review is barred unless he can make the requisite showing of cause and prejudice, or actual innocence.

Cause requires a showing of some impediment, external to the defense, preventing a petitioner from presenting or developing the factual or legal basis of a claim.   Murray, 477 U.S. at 488-89, 492.   Cause must be something "that cannot fairly be attributed to [the petitioner]."   Coleman, 501 U.S. at 753.   A petitioner's pro se status, lack of education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently *external* to constitute cause excusing a procedural default.

14

Sherron v. Norris, 69 F.3d 285, 289 (8th Cir. 1995); Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992); McKinnon v. Lockhart, 921 F.2d 830, 832 n.5 (8th Cir. 1991); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).   Because there is no constitutional entitlement to counsel in state post-conviction proceedings, the denial of or ineffectiveness of counsel in connection with such proceedings cannot constitute cause excusing a procedural default.  Coleman, 501 U.S. at 752, 757; Taylor v. Bowersox, 329 F.3d 963, 971 n.13 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004).

Petitioner argues at length that his pursuit of post-conviction relief has been hindered by the state's denial of discovery materials, transcripts, and investigative files, as well as the circuit court's refusal to file or act on his submissions.  He says he is indigent and pro se, has no knowledge of law or procedure, and has had little or no access to law library or research guide.  Under the applicable law, these allegations are insufficient to establish cause to excuse his default.  Additionally, while the belated disclosure of files and other materials could have been a factor in the formulation of his claims, the Court is not persuaded that it prevented him from complying with the procedural requirements for initiating and perfecting an appeal of the *coram nobis* denial.   He has not met the cause-prejudice requirement.

Petitioner also asserts that he is actually innocent of the charges against him, which can constitute an exception to the requirement of showing cause and prejudice.  To pass through the actual innocence gateway and permit federal habeas review of otherwise defaulted claims, a petitioner's case must be "truly extraordinary."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  To fit within this narrow exception, a habeas petitioner must (1) support his allegations of constitutional error with new reliable evidence not presented at

15

trial and (2) show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him." Id. at 324, 329. The exception is concerned with claims of factual innocence, not mere legal insufficiency. Calderon v. Thompson, 523 U.S. 538, 559 (1998).

Petitioner appears to claim innocence only as to the first degree murder, arson, aggravated robbery and one of the firearms convictions.

At his plea hearing, the state presented two law enforcement officers who testified about the evidence supporting the murder and arson charges. Their testimony was that, on June 3, 1996, a fire started in a shed, then spread into an attached mobile home. A body was found in the mobile home, and an autopsy showed that the victim had died of smoke and soot inhalation. Witnesses placed Petitioner in the area at the time of the fire, and they told police that he admitted starting the fire, had intended to burn the shed (which contained his belongings), but did not intend to hurt anyone. (Resp't Ex. L, at 21-27.)

Regarding the other charges, the prosecutor stated the following:

[On November 5, 1996], Conway Police Department received a call of a robbery wherein the victim stated that a black male and a white male later identified as this defendant, Michael Lenz, came up behind her with a small caliber gun and took her purse, which contained approximately $200 in cash. The vehicle that Mr. Lenz was operating was later stopped, he was taken into custody. Found in his possession was a small packet of tan powder that was sent to the State Crime Lab that tested positive there for 4.7996 grams of crystal methamphetamine, Your Honor. At that point in time his driver's license had been suspended, the vehicle had no safety inspection sticker, it was an improper registration and it had no safety inspection on it as well, in regard to the traffic offenses.

...On December 3, 1996, at approximately ten o'clock p.m., Michael Lenz went to the residence of a Randy Bates at 233 Highway, 365 driving a Black Ford Ranger. He exited that vehicle and at that point in time had in his possession an SKS rifle. He later returned to the vehicle, retrieved two more rifles out of his truck and he and a Jeremy Tuck carried them into the

16

residence.   And Your Honor, at that point in time he had already been previously convicted of approximately ... six or more other felony counts.

(Id. at 18-21.)

In support of his claim of innocence, Petitioner says his conduct did not amount to first degree murder because, although he set fire to the shed, it contained his own possessions (which his girlfriend had taken from him) and he did not expect or intend for the fire to spread to the nearby metal mobile home occupied by the girlfriend's nephew, especially since it was raining at the time.   He also says the robbery victim was not credible, and that he did not participate in any robbery but was only a "witness to questionable actions of both parties" (docket entry #42, at 36).   He also says that he should not have been convicted as a felon in possession of a firearm because his prior juvenile convictions were illegally obtained and should have been expunged.

He points to the following "crucial evidence that proves his actual innocence" and which, he says, was withheld from him (docket entry #41, at 4-6): the initial statements taken from state witnesses that "completely expunge him of any wrongdoings"; third party confessions to some of the crimes for which he was convicted; the alleged robbery victim's descriptions and identifying of a black male suspect, when Petitioner is white; investigators' statements and recommendations that no first degree murder was committed and that the death was accidental, requiring nothing worse than second degree; the fact that no official determination of arson was made; the fact that all state witnesses were convicted felons, drug addicts, and known liars who had made false court filings and reports; the fact that Petitioner was not present during some of the alleged crimes and investigators knew of his whereabouts; investigators' knowledge of a third party that was guilty of crimes Petitioner

was charged with; knowledge of drug abuse and other illegal activities by Petitioner's counsel; knowledge of the lead investigator's later arrest and termination for theft, falsifying evidence and obstructing justice in an unrelated case; illegal searches and forced coercion of witnesses and evidence; and the absence of any physical evidence linking Petitioner or establishing his guilt.

Most of this evidence would not be "new," as it was available to Petitioner or his counsel, or within Petitioner's knowledge, at the time he entered his plea or during his state post-conviction proceedings.  Even though he did not learn of some matters until his *coram nobis* proceedings, he could (and did) present arguments at that time based on the belated disclosures.  See Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (no actual-innocence showing with information that was available at trial, on direct appeal and throughout post-conviction proceedings), cert. denied, 126 S. Ct. 133 (2005); Hall v. Luebbers, 296 F.3d 685, 698 (8th Cir. 2002) (no actual-innocence showing with evidence that was "neither new nor sufficient" under Schlup standard); Morris v. Dormire, 217 F.3d 556 (8th Cir. 2000) (evidence not new if available at trial or "could have been discovered earlier through the exercise of due diligence").

Additionally, none of the evidence of which Petitioner speaks would establish his innocence, but rather would present additional matters for a jury to consider in assessing the credibility of the other evidence against him.  Where new evidence would simply set up a "swearing match" among witnesses, it does not establish that no reasonable juror could have credited the testimony of the state's witnesses and found the petitioner guilty beyond a reasonable doubt.  Moore-El, 446 F.3d at 903; see also Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999) (actual innocence exception inapplicable where there were

discrepancies between trial testimony and current statements, but new evidence was not exculpatory); Allen v. Nix, 55 F.3d 414, 417 (8th Cir. 1995) (exception inapplicable where evidence only tended to impeach other testimony and only indirectly supported the petitioner's version of facts).

Even accepting Petitioner's version of events, the evidence was clearly sufficient regarding the first degree murder conviction, for which Petitioner received the longest sentence. Under Arkansas law, a person commits first degree murder if "[i]n the course of and in the furtherance of the felony, ... [he] causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-102(a)(1)(B). A person commits arson (a felony) if he "starts a fire or causes an explosion with the purpose of destroying or otherwise damaging ... [a]ny property, whether his or her own or property of another person, if the act negligently creates a risk of death or serious physical injury to any person." Id. § 5-38-301(a)(1)(B).

Petitioner admits that he started the fire in the shed. Under the statutory language, it does not matter that he did not intend for the fire to spread, that he thought he was only burning up his own property, or that no official arson determination was made.

The actual-innocence exception is inapplicable, and Petitioner's claims are procedurally barred.

IV.
Pending Motions

By previous order (docket entry #35), the Court denied Petitioner's motions for issuance of subpoenas, to remand to the state court, to compel discovery, for a hearing, and for discovery. He has now filed a motion for reconsideration (docket entry #41), along

19

with a motion for a psychological and polygraph examination (docket entry #43). Because Petitioner's procedural default bars review of the merits of his claims, the motions are DENIED.

He has also filed another motion for an evidentiary hearing (docket entry #47). As stated in the order denying his previous request for hearing, a federal habeas court's power to conduct an evidentiary hearing is "sharply limited" by statute. Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir.), cert. denied, 126 S. Ct. 93 (2005). Where a habeas petitioner has failed to develop the factual basis of his claims in state court proceedings, the federal court "*shall not*" hold an evidentiary hearing unless the petitioner shows (1) that his claims rely on "a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court," or "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A), *and* (2) that "the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," id. § 2254(e)(2)(B). Petitioner has not met this standard.

His motion for factual consideration (docket entry #42) is GRANTED. The matters contained in the motion have been reviewed and considered.

His motion (docket entry #51) for copies of the transcripts attached as Exhibits L and M to docket entry #32 is GRANTED. The Clerk of the Court is directed to provide him with copies of these exhibits.

V.
Conclusion

This 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2) is DISMISSED in its entirety with prejudice.  Petitioner's motion for factual consideration (docket entry #42) is GRANTED, his motion for copies (docket entry #51) is GRANTED, and all other pending motions (docket entries #41, #43, 47) are DENIED.

IT IS SO ORDERED this 18th day of September, 2006.


_____
UNITED STATES MAGISTRATE JUDGE